E-FILED
Friday, 13 November, 2026 05:18:48 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| GABRIELA J. MENDOZA-RANGEL,<br>Plaintiff,<br><br>v.<br><br>RACHEL M. BOWDEN; GEORGE L. BARNES; HEATHER DILLAWAY; ANI YAZEDJIAN; CLAUDIA PETRESCU,<br>Defendants. | Case No. 1:26-cv-1493-JEH-RLH |

**Order**

Now before the Court is the pro se Plaintiff's Emergency Motion for a Temporary Restraining Order.[1] (D. 3). For the reasons stated *infra*, the Plaintiff's Emergency Motion for a Temporary Restraining Order is GRANTED in PART.

**I**

The Plaintiff, Gabriela J. Mendoza-Rangel (the Plaintiff), commenced this action on November 11, 2026, against the Defendants—Rachel M. Bowden, George L. Barnes, Heather Dillaway, Ani Yazedjian, and Claudia Petrescu (collectively, the Defendants)—alleging the Plaintiff was discharged from her doctoral program at Illinois State University in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution. Also on November 11, 2026, the Plaintiff filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction enjoining the Defendants from executing Plaintiff's academic

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

dismissal.[2] The Defendant has not responded, likely not having an opportunity to do so if, in fact, it is even aware of this lawsuit yet.

**II**

The Plaintiff alleges the following, which the Court accepts as true for purposes of the present motion only. She started her PhD program in the fall of 2022 at Illinois State University (ISU). She joined the laboratory of Professor Thomas Hammond in January 2023. The Plaintiff successfully passed her Qualifying Examination and defended her Doctoral Dissertation Proposal in February 2025, receiving written confirmation from committee member Associate Professor Dr. Kevin Edwards on April 21, 2025, that her finalized revisions look "great" and merited a favorable vote. Official centralized university records certify that the Plaintiff maintains a cumulative graduate GPA of 3.50, certifying the Plaintiff is in good academic standing.

Between 2025-2026, the Plaintiff reported research misconduct, plagiarism, and the unauthorized appropriation of federally funded biological strains and data to external oversight authorities. One way the Plaintiff reported the misconduct was bringing a lawsuit in state court against various ISU professors. The case in state court is currently pending on appeal.

The Plaintiff alleges that the Defendants first retaliated for the Plaintiff's whistleblowing disclosures by attempting to coerce the Plaintiff into signing a "Mentoring Agreement", which would forfeit her intellectual property rights. The Plaintiff would not sign the agreement. The Plaintiff was then locked out of the laboratory. Next, the Defendants obstructed the Plaintiff's formal April 2026

---

[2] Under the Emergency Temporary Restraining Order, the Plaintiff also asks the Court to restore the Plaintiffs' access to her research tools, transfer the Plaintiff's academic supervision to Dr. Marjorie Jones, and require a fellow student to develop an original research project rather than misappropriate the Plaintiff's work. These requests are not tied to the immediate and irreparable harm that the Plaintiff seeks and will not be ordered.

requests to designate tenured Chemistry Professor Dr. Majorie Jones as the Plaintiff's co-mentor to complete her doctoral research.

On October 13, 2026, directly after the Plaintiff docketed her state appeal, the Defendants initiated the Plaintiff's academic dismissal based on the Plaintiff lacking good standing, failing her proposal defense, and lacking an advisor. Contrary to the Defendants' charges, the Plaintiff demonstrates she is in good standing and passed her proposal defense. While the Plaintiff lacks an advisor, she demonstrates a blocked attempt to secure an advisor. The Plaintiff alleges that the academic dismissal was brought in retaliation for the Plaintiff's whistleblowing.

On October 23, 2026, the Plaintiff formally objected that Defendant Dean Heather Dillaway could not adjudicate her dismissal appeal because Dillaway is an active, named defendant/appellee in the Plaintiff's state action involving Dillaway's alleged academic coercion. On November 11, 2026, the Defendants finalized the Plaintiff's academic dismissal. Defendant Associate Dean George L. Barnes, acting under the appointment of Defendant Dean Heather Dillaway, issued the final internal administrative decision upholding the Plaintiff's summary dismissal from the Ph.D. Program, ordering that: "As a result, you will be dropped from any enrolled courses and become inactive."

The Plaintiff contends she was not given an opportunity to present evidence of the whistleblowing retaliation. Additionally, the Plaintiff was denied a neutral judge in her academic dismissal.

Because the Plaintiff is an international doctoral scholar from Mexico lawfully present in the United States on an F-1 nonimmigration student visa, dropping the Plaintiff from her enrolled courses and changing her university status to "inactive" immediately obligates ISU's Designated School Officials under federal regulations to terminate her federal SEVIS record. Once the Plaintiff's SEVIS record is terminated, the Plaintiff immediately loses lawful immigration

status, forfeits her Graduate Assistantship employment authorization, and creates an imminent risk of removal from the United States.

**III**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (citing *Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). In order to succeed, the moving party must show they have a (1) "reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman v. Illinois Dep't. of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004).

**A**

The Plaintiff demonstrates a reasonable likelihood of success on the merits of her Fourteenth Amendment claim.

"To have a due process claim you must show that you have been deprived of a property right." *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). "[T]he Supreme Court has read the word "property" in the due process clauses of the Fifth and Fourteenth Amendments to include pretty much any legally protected entitlement." *Id.* In the context of a graduate student and a public university, a graduate student may have a property right in her education if an implied contract exists between the student and the school. *See id.* (holding due process could attach to a college student with a legal entitlement to attend the school under an implied contract); *Bisessur v. Ind. U. Bd. of Tr.*, 581 F.3d 599, 602 (7th Cir. 2009) ("A right established by an implied contract between a student and a university can be a property interest subject to constitutional protection"). Given the Plaintiff's

pleadings, the Plaintiff has a reasonable likelihood of success in demonstrating that an implied contract existed between the Plaintiff and ISU: if the Plaintiff complies with the requirements of her doctoral program and remains in good standing, the Plaintiff may continue her program.

"When considering cases that originate in an educational institution, the law distinguishes between academic dismissals and disciplinary dismissals." *Hlavacek v. Boyle*, 665 F.3d 823, 826 (7th Cir. 2011). "Dismissals for poor academic performance 'require no hearing at all.'" *Id.* (citing *Martin v. Helstad,* 699 F.2d 387, 391 (7th Cir.1983)). "It is sufficient that the student was informed of the nature of the faculty's dissatisfaction and the ultimate decision to dismiss was careful and deliberate." *Id.* (internal citations omitted). Here, the Plaintiff is arguing that the Defendants' decision to terminate the Plaintiff's education was not careful and deliberate but rather malicious and retaliatory. The Plaintiff makes clear allegations counteracting each of the Defendants' cited reasons for the academic dismissal. The Plaintiff demonstrates a reasonable likelihood of success on the merits of her Fourteenth Amendment claim.

**B**

The Plaintiff demonstrates that no adequate remedy exists at law. The Plaintiff will be irreparably harmed without injunctive relief. *See Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1118626, at *5 (W.D. Wis. 2025) (holding the plaintiff faces "possible devastating irreparable harm due to the termination of his F-1 student record in SEVIS"). Specifically, the Plaintiff would lose her status as a doctoral student, have her academic record permanently damaged, and lose her opportunity to finish her dissertation and research, which she has worked on for years. Moreover, the Plaintiff will lose her lawful status in the United States. *See id.* No adequate remedy exists at law to rectify the Plaintiff's continued academic dismissal.

**C**

The Plaintiff demonstrates that she will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the Defendants will suffer if the injunction is granted. If the injunction is granted and the Plaintiff remains a doctoral student for 14 days, the Defendants will not be irreparably harmed. The Defendants may be inconvenienced with additional paperwork at most. Unlike the Plaintiff, the Defendants do not face the loss of years of work and deportation. Balancing the harm facing the Plaintiff versus the harm facing the Defendants favors granting the injunctive relief.

**D**

The Plaintiff demonstrates the injunction will not harm the public interest. To the extent the public interest is relevant here, the public has an interest in due process being upheld and whistleblowers being protected from retaliation. The public will not be harmed if the Plaintiff remains a doctoral student.

**E**

"The court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney only if" (1) facts in "a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before" the Defendants can respond, and (2) the Plaintiff "certified in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. PRO. 65(b)(1)

Here, the Plaintiff's Complaint, along with the attachments and the Plaintiff's sworn statements, show that immediate and irreparable injury will result to the movant before the Defendants can respond. Specifically, the Plaintiff faces academic dismissal. The Plaintiff's academic dismissal entails numerous, irreparable consequences including the loss of her research, termination of her program, and disruption to her immigration status. Because the academic

dismissal became effective on November 11, 2026, and because the Plaintiff filed the present Motion on the same day, the immediate and irreparable injury stemming from the Plaintiff's academic dismissal will occur before the Defendants can respond.

Additionally, the Plaintiff certified her efforts to give notice to the Defendants. Since October 13, 2026, when the Defendants initiated the Plaintiff's academic dismissal, the Plaintiff has attempted to advocate for herself, engage with the defendants, and resolve the conflict. The Plaintiff's efforts have been unsuccessful. Given the Plaintiff's attached emails and letters, it is clear that the Defendants were aware of and disregarded the Plaintiff's objections to her academic dismissal. Although she may not have given notice to the Defendants of the actual motion for a temporary restraining Order, they certainly had notice of the claims she makes in that motion.

In light of the immediate and irreparable harm facing the Plaintiff and the communication between the Plaintiff and the Defendants being futile, the Plaintiff is entitled to injunctive relief at this time in spite of the Defendants' lack of notice.

**V**

For the reasons set forth *supra*, the Plaintiff's Motion for a Temporary Restraining Order is GRANTED in PART. The Defendants are, for a period of 14 days following the entry of this Order on November 13, 2026, at 5:00 p.m.,

1. Enjoined from executing the Plaintiff's academic dismissal;
2. Enjoined from terminating, or notifying others to terminate, the Plaintiff's federal SEVIS record; and
3. If the Plaintiff's SEVIS record has been terminated, the Defendants are directed to provide a copy of this Temporary Restraining Order to the same body to whom the termination was communicated.

Pursuant to Rule 65(c), the Court finds that no security is proper under the circumstances of this case given the Plaintiff's alleged indigency.

Additionally, the Plaintiff's Motion for Leave to File and Receive Notices Electronically is GRANTED.

This matter is SET for a status hearing in person on Wednesday, November 18, 2026, at 11:00am at the Peoria Federal Courthouse in Courtroom A.

*It is so ordered.*

Entered on November 13, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE